UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | CRIMINAL INDICTMENT NO. |
| v. | 1:20-CR-196-LMM-JSA-7 |
| | |
| MARIELA HERNANDEZ, | |
| | |
| DEFENDANT. | |

**DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS TO INCLUDE ILLEGALLY SEIZED EVIDENCE AND STATEMENTS, AND REQUEST FOR A *JACKSON v. DENNO* HEARING**

**COMES NOW**, **Defendant Mariela Hernandez**, (hereinafter, "Defendant"), by and through undersigned counsel, and files this Defendant's *Supplemental Motion to Suppress to Include Illegally Seized Evidence and Statements*, *and Request for a Jackson v. Denno Hearing*, and in support thereof shows this Honorable Court the following:

**INTRODUCTION**

On March 18, 2020, Defendant was driving a vehicle with a now-indicted co-defendant in this case, Maria Cornejo. Georgia Public Safety officer Munoz purportedly stopped their vehicle for speeding, although the detaining officer was not operating radar; gave varying estimates of her speed at different points during the stop; and had been asked to stop the vehicle by DEA agents, who themselves did not have a legitimate basis to stop the car, as part of an ongoing drug investigation. Nonetheless, Munoz had

Defendant step out of the car with the stated purpose for the stop being abandoned shortly thereafter. As the conversation ensued, the actual purpose of the stop became clear when the detaining officers began asking if there was anything illegal in the car. When Defendant answered in the negative, Munoz continued to press her on that issue. Because Defendant did not have a driver's license, her fingerprints were run using an electronic scanner. After the results of the scan came back and confirmed who she was, Munoz asked for permission to search the vehicle. Defendant initially says she has no problem with that, but then indicated she should call the owner to get his permission. Officers told her they cannot allow that, so she declined consent.

Fourteen minutes into the video of the stop, another officer is seen walking a dog in a grassy area near the scene of the traffic stop, seemingly to allow the K-9 to relieve itself. He then walks the dog over to the vehicle driven by Defendant. The dog immediately goes *inside* the vehicle, entering through the open driver's side door, and after attempting to get the dog out of the vehicle, the officer himself leans *inside* the vehicle and gets the K-9 out.

The officer with the dog, later identified as MCO Stanley and his dog Ozon, then puts the dog back in his vehicle and comes over to tell the Defendants that his dog is trained to detect the odor of narcotics. He further explains that his dog

is a "passive indicator", and that his dog either "sits, stands, stares, or lays down" when he detects illegal narcotics. He says his dog alerted on the car and as a result that officers were going to search the vehicle.

The arresting officer, Munoz, can be seen taking the Defendant's keys and wallet and using the key to unlock the trunk. During this warrantless search of the trunk, agents discovered contraband inside of a plastic tub container with a lid – more specifically, several bags of suspected methamphetamine.

Munoz then takes Defendant's phone and, without a warrant, changes the phone's settings to put it in "airplane mode". He proceeds to tell her she is in big trouble and, without advising her of her right to counsel or any of her other rights under *Miranda,* begins asking Defendant questions about her control of the vehicle; what is in various bags; where she got the car; whether she is a drug courier; whether she was paid to courier drugs; and whether she was threatened or coerced by someone to be a courier, etc. Defendant denies that she is a courier or carries anything. After several minutes of the on-scene officers deciding whether Hernandez should even be arrested, the video ends.

Prior to leaving the scene, federal agent Henao took Defendant Hernandez aside and began interrogating her. In response to his question about whether she was willing to answer some questions, Defendant replied, "I don't think there is much that I can answer

because there is not much that I know." TFO Henao's report indicates that he "explained that whatever little information that she was willing to provide *could assist her down the road*." He continued asking her numerous questions about her involvement in the case and she continued responding to his questioning. When Defendant Hernandez became hesitant, Henao "explained to Hernandez that her answers were not to help him, that they were to help her since the investigation was at the federal level and that she was detained with more than ten kilograms of methamphetamine."

Defendant then resumed answering Henao's questions, once again, until he concluded the interview.

## ARGUMENT AND CITATION OF AUTHORITY

### The Search

Defendant moves to suppress the seizure of any items, statements and/or other information discovered as a result of the stop and/or subsequent search of the vehicle she was driving, which occurred without a **search warrant** and without probable cause to believe that criminal activity was afoot at the time of the stop, contrary to Defendant's constitutional rights under the Fourth Amendment to the United States Constitution and Article I section I paragraph XIII of the Georgia Constitution. See also O.C.G.A. § 17-5-30; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The Fourth Amendment of the Constitution of the United States provides:

> The right of people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the ... persons ... to be seized.

Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. Katz v. United States, 389 U. S. 347, 357 (1967). Because the burden is on those officers who conduct a search without a warrant to show the search was conducted pursuant to an exception to the Fourth Amendment warrant requirement, it can be said that a search without a warrant is presumed to be invalid, and "the burden is on the state to show that the warrantless search was valid." Mincey v. Arizona, 437 U.S. 385 (1978).

Here, while officers claimed to have stopped the vehicle for a speeding violation, they did not have a warrant authorizing the search of the vehicle, Defendant, or any items in her possession. Similarly, there were no exigent circumstances which would have authorized a search without a warrant, as Defendant and Cornejo had already been removed from the vehicle, led away from the vehicle and/or confined to the back of a police vehicle for

interrogation, and were without any access to the vehicle she had been driving. Moreover, the stop of the vehicle was not for a traffic violation or any other criminal activity observed by the detaining or arresting officers to investigate. Because agents did not have even a reasonable suspicion that she was involved in criminal activity, once Defendant was going to be given a warning or cited and officers verified Cornejo's license was valid, Cornejo should have been free to leave with the vehicle. In addition, the investigating agents could not have had the vehicle towed to a secure location and obtained a search warrant, because they had no probable cause to believe at the time of the stop that the parties or the vehicle were involved in criminal conduct.

    The Supreme Court has long held that the exclusionary rule requires the suppression of "fruits" obtained "as a direct result" of an illegal search, arrest, or an invalid interrogation. Weeks v. United States, 232 U.S. 383 (1914); See also Mapp v. Ohio, 367 U.S. 643 (1961); Nardone v. United States, 308 U.S. 338, 341 (1939); Wong Sun v. United States, 371 U.S. 471 (1963). Accordingly, Defendant moves to suppress all items that were the fruit of the illegal search of the vehicle.

**The Interrogation**

Defendant also moves to suppress any statements made to law enforcement during or after her arrest, as they were obtained contrary to her Constitutional Rights guaranteed under the Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution.  See Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed.2d 682 (1936), Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and their progeny. See, e.g. Edwards v. Arizona, 451 U.S. 477 (1981); Davis v. United States, 512 U.S. 452 (1994); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1969).  It is anticipated that the Government will attempt to introduce evidence at trial of certain oral admissions, or fruits thereof, made by the Defendant to law enforcement agents after the stop of the vehicle and her arrest. Those statements, which may incriminate the Defendant, were made in the absence of counsel, and without an intelligent or knowing waiver of counsel, without a knowing and intelligent waiver of her right to remain silent, with the hope of benefit, and were not voluntary.

A.   **Custody under Miranda**

Custody for the purposes of Miranda begins when there is a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463

U.S. 1121, 1125 (1983); United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006).  To determine whether a defendant is in custody under Miranda, courts use a totality of the circumstances test to decide whether "a reasonable man in his position would feel a restraint on his freedom of movement to such an extent that he would not feel free to leave." United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir. 2001); Brown, 441 F.3d at 1347.

The totality of the circumstances test to decide custody for Miranda purposes is an objective determination.  United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996); Brown, 441 F.3d at 1347.  The subjective beliefs of the defendant or the interviewing officer are irrelevant.  Id.; Brown, 441 F.3d at 1347.  It is not dependent on the self-serving declarations of either party, nor does it "place upon the police the burden of anticipating the frailties or idiosyncrasies of every person whom they question." Berkemer v. McCarty, 468 U.S. 420, 442 n. 35 (1984).  The standard for a determination of custody is a reasonable innocent person standard.  Moya, 74 F.3d at 1119; Brown, 441 F.3d at 1347.

Clearly, having already been told to exit the vehicle, to remain standing over by the police vehicle, then being surrounded by both local and federal law enforcement agents, and later being confined to the back of TFO Henao's vehicle for

interrogation constitutes being in custody for Miranda purposes. Moreover, the fact that Defendant was being told she was in "big trouble", that this was a federal case now, that her kids were going to have kids by the time she got out of prison, and the police had taken her phone, her wallet, and the keys, would objectively lead anyone to believe they were not free to leave.

**B. Interrogation under Miranda**

For Miranda protections to apply a defendant must show there was an interrogation. "Interrogation" not only includes the formal police inquiry, but any "functional equivalent" that police should reasonably know will likely elicit incriminating responses. Rhode Island v. Innis, 446 U.S. 291 (1980). The test includes several objective and subjective components, such as: 1) the nature of police remarks as lengthy and/or evocative; 2) the police awareness of the accused's mental or physical stability; and 3) the intent of the police in making such statements and if they should have known their remarks would likely elicit an incriminating response. Id.

Under any analysis or standard it is readily apparent that the effort of federal agents and local officer to get Defendant to claim the drugs in the car was an interrogation. Moreover, agents interrogated Defendant and Cornejo with regard to the drugs, whose car it was, where they stopped previously, if they knew CHILDERS, TOLDEDO, or OCHENTA and whether they could

identify them, as well as Defendant's role as a courier, who was paying her, whether she had done this before, how much she was getting paid, who she was working for, whether she had been coerced into being a drug courier, and other questions along those lines.

**C. Right to Remain Silent Under Miranda**

More important than any other factor to be considered in the totality of the circumstances analysis, is whether the suspect "exercised the most basic method at his disposal for avoiding discussions with police – simply not talking to them." Brown, 441 F.3d at 1349 (where defendant failed to refuse discussing with investigators concerning criminal matters under investigation).

This right to cut off questioning is a one of the numerous procedural safeguards established by the Miranda Court. Miranda v. Arizona, 384 U.S. 436, 474 (1966). The right to remain silent under the Fifth Amendment demands that the police stop questioning a suspect once the suspect "indicates *in any manner*, at any time ... during questioning, that he wishes to remain silent." Michigan v. Mosley, 423 U.S. 96, 100 (1975)(emphasis added); Miranda, 384 U.S. at 473-74. This right to cut off questioning may be invoked when a suspect refuses to say anything at all to investigators. United States v. Hernandez, 574 F.2d 1362 (5th Cir. 1978)(where suspect refused to answer

questions on four separate times during an interrogation, a confession resulting from the fourth set of questionings was illegally obtained in violation of Miranda).

"[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his right to cut off questioning was 'scrupulously honored.'" Mosley, 423 U.S. at 104; Hernandez, 574 F.2d at 1369. Whether a suspect's right to cut off questioning was scrupulously honored requires a case by case analysis. United States v. Corral-Martinez, 592 F.2d 263 (5th Cir. 1979); Hernandez, 574 F.2d 1362. Factors to consider in determining whether officers honored such a request include a significant time span before starting another attempt to interrogate and restricting subsequent interrogations to subjects not a part of earlier interrogations. Mosley, 423 U.S. at 109; Jackson v. Dugger, 837 F.2d 1469 (11th Cir. 1988); Christopher v. Florida, 824 F.2d 836 (11th Cir. 1987); Hernandez, 574 F.2d 1362. If the interrogators promptly continue a line of questioning, their acts may be deemed "immediate, repetitive, and deliberate," and in violation of Miranda. Hernandez, 574 F.2d at 1369 (where subsequent interrogations occurred immediately or only several minutes after suspect refused to answer questions).

Additionally, it will not matter if the suspect voluntarily and immediately continues the interrogation after asserting his right to silence. The fact the interrogators failed to immediately end questioning is not mooted by any subsequent answers from the suspect after not scrupulously honoring the suspect's request to stop the interrogation. Christopher, 824 F.2d at 841; Hernandez, 574 F.2d at 1369. "[A]n accused's *post-request* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." Smith v. Illinois, 469 U.S. 91, 98 (1984)(emphasis in original).

Here, Defendant demonstrated her "unwillingness" to participate in the questioning, by refusing to answer certain questions, repeatedly stating that she did not know what they were talking about, and remaining quiet in response to certain questions, until Henao would prompt her to talk by saying it would help her out later down the road.

### D. No Free and Voluntarily Waiver of Miranda

In order to waive one's Fifth Amendment protections, the Supreme Court established in Miranda v. Arizona, 384 U.S. 436 (1966), that such a waiver must be freely and voluntarily made. See also, Moran v. Burbine, 475 U.S. 412 (1986). The inquiry into whether a suspect voluntarily waived his Miranda rights involves the analysis of 1) whether the choice was a free one or

the product of intimidation, coercion, or deception; and 2) whether the suspect was aware of both the nature of the right being waived and the consequences of waiving those rights. Id.; Dunkins v. Thigpen, 854 F.2d 394 (11th Cir. 1988); Agee v. White, 809 F.2d 1487 (11th Cir. 1987).

The Fifth Amendment of the United States Constitution also provides no person "shall be compelled in any criminal case to be a witness against himself ...." To prevent compelled and coerced testimony, officers of the government must issue prophylactic warnings when *custodial* interrogations *begin*. Dickerson v. United States, 530 U.S. 428, 435 (2000); Miranda v. Arizona, 384 U.S. 436, 479 (1966).

In this case, it is important to note that when the interrogation began, Munoz simply told Defendant she can talk, but she doesn't have to. He never read Miranda and never obtained an acknowledgement from Defendant that she understood or was waiving those rights.

Because Defendant's statements were obtained contrary to her rights under the United States Constitution and the precedent established under Miranda, her motion to suppress its use at trial must be granted.

**D. Defendant's Statements Were Not Freely and Voluntarily Given**

It is axiomatic that a defendant in a criminal case is deprived of due process of law if a conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession. <u>Rogers v. Richmond</u>, 365 U. S. 534. A defendant, therefore, has a constitutional right to a fair hearing and reliable determination of the voluntariness of a confession, not influenced by its truth or falsity. <u>Jackson v. Denno</u>, 378 U.S. 368, 377 (1964). To be voluntary, a statement must be freely and willingly given, with complete understanding, **without coercion, duress**, threats, use of violence, or fear of injury, **and without any suggestions or promises of leniency or reward**. <u>Id</u>.  A statement induced by the slightest hope of benefit, or the remotest fear of injury, is not voluntary.  To be voluntary, a statement must be the product of a free will and not under compulsion or any necessity imposed by others.

Here, the statements tending to incriminate the Defendant were made in the absence of counsel and without an intelligent or knowing waiver of counsel.  Moreover, any statements made by Defendant Hernandez were obtained by coerced and implied threats that if she did not make self-incriminating statements with regard to the drugs then things would go very badly for her.  In Particular, Munoz told her "this is the time to be honest… this

is important because if there's drugs in your car you can go away for a very long time…like your kids will have kids before you get out."

In addition to the coercive and threatening tactics used by officer Munoz, TFO Henao used overt promises of leniency and reward to induce Defendant to make incriminating statements and overcome her desire to remain silent. For instance, Henao's report indicates that he "explained [to Hernandez] that whatever little information that she was willing to provide **could assist her down the road."** And, when Hernandez became hesitant to talk again later in the interrogation, Henao prodded her into continuing to talk by telling her that "[Hernandez's] **answers were not to help him, that they were to help her** since the investigation was at a federal level and she was detained with more than ten kilograms of methamphetamine." Because there was no clear understanding or waiver of her right to counsel, and because coercive tactics were used to obtain Defendant's alleged statements, including overtly implying she would be rewarded and shown leniency, such statements were not made voluntarily.

## Conclusion

**WHEREFORE**, Defendant prays that this Court suppress: any evidence obtained pursuant to the unlawful, warrantless search of the vehicle Defendant was driving, in violation of her rights under the Fourth Amendment; any and all statements obtained as

fruit of the illegal search, and/or in violation of Defendant's Fifth Amendment rights under Miranda; and any statements not freely and voluntarily given.  Defendant further requests that the Court conduct a hearing, in addition/conjunction with the hearing on the warrantless search of his vehicle, pursuant to Jackson v. Denno to determine the voluntariness of any statements under the totality of circumstances of this case; and to determine the validity of any waiver of counsel prior to the custodial interrogation.

Respectfully submitted, this 13th day of May, 2021.


/s/ L. David Wolfe                  /s/ Brian Tevis
L. David Wolfe, P.C.                Tevis Law Firm, LLC.
Georgia Bar No. 773325              Georgia Bar No. 615008
Attorney for Defendant              Attorney for Defendant
101 Marietta St. NW Ste 3325        101 Marietta St. NW Ste 3325
Atlanta, Georgia 30303              Atlanta, GA 30303
404-352-5000                        404-921-3800
*profldwolfe@aol.com*               *brian@tevislawfirm.com*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| | **CRIMINAL INDICTMENT NO.** |
| **v.** | **1:20-CR-196-LMM-JSA-7** |
| | |
| **MARIELA HERNANDEZ,** | |
| | |
| **DEFENDANT.** | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of *Defendant's Supplemental Motion to Suppress to Include Illegally Seized Evidence and Statements, and Request for a Jackson v. Denno Hearing* upon the following individual by electronic filing, which will automatically send email notification of such filing to the following:

**John Thomas DeGenova**
Assistant United States Attorney
600 US. Courthouse
75 Ted Turner Drive SW
Atlanta, Georgia 30303
404-581-6000
John.DeGenova@usdoj.gov

Respectfully submitted, this 13th day of May, 2021.

| | |
|---|---|
| /s/ L. David Wolfe | /s/ Brian Tevis |
| L. David Wolfe, P.C. | Tevis Law Firm, LLC. |
| Georgia Bar No. 773325 | Georgia Bar No. 615008 |
| Attorney for Defendant | Attorney for Defendant |
| 101 Marietta St. NW Ste 3325 | 101 Marietta St. NW Ste 3325 |
| Atlanta, Georgia 30303 | Atlanta, GA 30303 |
| 404-352-5000 | 404-921-3800 |
| *profldwolfe@aol.com* | *brian@tevislawfirm.com* |